IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

|  |  |  |  |
|---|---|---|---|
| RYAN J. MORRIS, | : | NO: 1:22-bk-02205-HWV |  |
|  | : |  |  |
| Debtor | : | Chapter 11 |  |
|  | : | Subchapter V |  |

**PLAN OF REORGANIZATION OF
RYAN J. MORRIS**

Ryan J. Morris ("Debtor") proposes the following Plan of Reorganization (the "Plan") with respect to its Chapter 11 case:

**ARTICLE I
DEFINITIONS**

Set forth below are various terms which shall, except where the context otherwise requires, have the respective meanings listed herein. All of the following meanings shall be applicable to the singular and plural forms of the following defined terms:

**1.1.    Accounts Receivable** shall mean sums owed to the Debtor for charges on account of the Debtor providing services, or rents owed to the Debtor

**1.2.    Administrative Claim** shall mean an administrative expense from and after November 14, 2022, the date on which this case commenced, which is entitled to priority in accordance with Section 507(a)(1) of the Code and allowed under Section 503 of the Code.

**1.3.    Administrative Professional Claim** shall mean compensation and reimbursement of professionals, including attorneys, accountants, experts, consultants and realtors as allowed by the Court under Section 330 of the Code.

**1.4.    Allowed Claim** shall mean a Claim which is scheduled pursuant to the Code, or stipulated of record in this Chapter 11 Case, other than a Claim scheduled as disputed, contingent or unliquidated, or which is identified in a Court approved Stipulation filed of record in this Chapter

11 Case, or which has been filed pursuant to Section 502(a) of the Code, and with respect to which no objection to the allowance thereof has been interposed within the time allowed by the Court or Bankruptcy Code, or as to which any objection has been overruled (and to the extent so overruled) by a Final Order. An Allowed Claim shall not include any interest accruing on a Claim except as specifically authorized by the Plan.

**1.5.**    **Ally Financial Inc.** shall mean a financing company which had granted two (2) vehicle loans to the Debtor.

**1.6.**    **Assets** shall mean the Debtor's Personal Property and Vehicles.

**1.7.**    **Business Property** shall mean the Debtor's Commercial Real Estate.

**1.8.**    **Capital One Auto Finance or Capital One** is a financing company which is a creditor of the Debtor and has one (1) vehicle loan granted to the Debtor.

**1.9.**    **Cash** shall mean cash and cash equivalents.

**1.10.**    **Chapter 7 Case** shall mean the Chapter 7 case of the Debtor originally filed on November 14, 2022, and converted to Chapter 13 on April 4, 2023.

**1.11.**    **Chapter 11 Case** shall mean the proceeding commenced by voluntary petition under Chapter 7 of the Code at Case No. 22-2205, in the United States Bankruptcy Court for the Middle District of Pennsylvania and converted to Subchapter V under Chapter 11 of the Code on June 13, 2023.

**1.12.**    **Chapter 13 Case** shall mean the case of the Debtor which was converted from Chapter 7 to Chapter 13 of the United States Bankruptcy Code by an Order of the Bankruptcy Court dated April 4, 2023.

**1.13.**    **Chase Bank** is a financial institution that has two (2) mortgage loans on the Debtor's Former Marital Residence.

2

**1.14.** **Claim** shall have the meaning as provided by Section 101(4) of the Code.

**1.15.** **Code or Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101, *et seq*., commonly referred to as the Bankruptcy Code.

**1.16.** **Commercial Real Estate** shall mean non-residential real estate owned by the Debtor and located at 1685 Baltimore Pike, Gettysburg, Pennsylvania; 2781 Old Route 30, Orrtanna, Pennsylvania and 1800 Baltimore Pike, Gettysburg, Pennsylvania.

**1.17.** **Contingent Claim** shall mean any Claim for which the Debtor is not directly liable, is listed as contingent on the Schedules, and has not been determined otherwise by a Final Order.

**1.18.** **Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Pennsylvania in which Court the Debtor's Chapter 11 case is pending.

**1.19.** **Debtor** shall mean Ryan J. Morris, the Debtor in the above-Chapter 11 case.

**1.20.** **Disputed Claim** shall mean any Claim which is listed as disputed on the Schedules, or to which an objection to the allowance thereof has been interposed, and has not been determined otherwise by a Final Order.

**1.21.** **Effective Date** shall mean the Effective Date of the Plan which date shall be the first day of the month following thirty (30) days after the Confirmation Order becomes final, and shall not have been reversed, stayed, or adversely modified or amended. The Effective Date is as further set forth in Section 16.2 of the Plan. Such date is subject to the right of the Debtor to request that the Court extend the Effective Date.

**1.22.** **Farmers & Merchants Bank or F&M** shall mean a banking institution which is a creditor of the Debtor, which granted two (2) loans to Tripwire on which the Debtor is also obligated.

**1.23.** **Final Order** shall mean an Order of the Bankruptcy Court which has not been reversed or stayed and to which:

a.    The time to appeal or seek review, rehearing or certiorari has expired and no timely appeal has been filed, or

b.    Any appeal has been finally resolved.

**1.24.    Former Marital Residence** shall mean the real estate owned by the Debtor and Karen L. Morris and known and designated as 19 Misty Lane, Biglerville, Pennsylvania.

**1.25.    Goldman Sachs Mortgage Company or Goldman Sachs** shall mean a banking institution which granted a loan to the Debtor which has as collateral the Residential Real Estate. The Goldman Sachs loan is serviced by Shellpoint Mortgage Servicing.

**1.26.    ITC Capital Partners, LLC or ITC** shall mean an entity which is believed to have a judgment lien against the Debtor.

**1.27.    Kubota Credit Corp. or Kubota** shall mean a financial institution which is a creditor of the Debtor, which has a loan on a tractor.

**1.28.    Marital Real Estate** shall mean real estate owned by the Debtor and Karen L. Morris and known and designated as 19 Misty Lane, Biglerville, Pennsylvania.

**1.29.    Merchant Capital Companies** shall mean one or more of Swift Financial, LLC; Barnard & Fifth Capital Group, LLC or Kapitus Servicing, Inc. each of which may have provided advances to Tripwire.

**1.30.    Personal Property** shall mean the Debtor's present and future accounts receivable, chattel paper, securities, partnership interests, motor vehicles, documents, equipment, furniture, household goods, general intangibles, inventory, and all products and proceeds thereof.

**1.31.    Petition Date** shall mean November 14, 2022.

**1.32.    Plan** means this Plan, and as it may be modified or amended, as is applicable.

**1.33.    Priority Claim** shall mean a Claim, other than an Administrative Claim or Tax Claim, as to which priority in payment is asserted pursuant to Section 507(a) of the Code.

4

**1.34.** **Pro Rata** shall mean the same proportion that a Claim in a particular Class bears to the aggregate amount of all allowed Claims in such Class.

**1.35.** **Residential Real Estate or Residence** shall mean Debtor's residence known and designated as 1425 Knoxlynn Orrtanna Road, Orrtanna, Pennsylvania.

**1.36.** **Santander Consumer USA, Inc. or Santander** shall mean a financial institution which is a creditor of the Debtor, which is secured on a vehicle.

**1.37.** **Shellpoint Mortgage Servicing** shall mean a financial institution which services a mortgage loan secured by the Debtor's Residence

**1.38.** **Subchapter V Trustee** shall mean Lisa A. Rynard, Esquire, or any substitute, as appointed by the Office of the U.S. Trustee.

**1.39.** **Tripwire Operations Group, LLC or Tripwire** shall mean a company formerly owned by the Debtor which company filed a Chapter 7 bankruptcy to Case No. 1:22-01473 in the United States Bankruptcy Court for the Middle District of Pennsylvania.

**1.40.** **Vehicles** shall mean any motor vehicle titled by a state governmental agency.

**1.41.** Any term which is used in this Plan which is not defined herein, but is used in the Bankruptcy Code or found in the Bankruptcy Code, has the meaning assigned to it in the Code.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

Certain Claims and interests in this Case are divided into unclassified groups and are named as Classes for convenience only as follows:

**2.1.** **Class 1.** **Professional Administrative Costs.**

**2.1.1** **Class 1**. The expenses and Claims of administration for compensation and reimbursement of professionals as allowed by the Court under Section 330 of the Bankruptcy Code.

5

**2.2**.   **Class 2.**          **Administrative Claims**.

**2.2.1**   To the extent that they are allowed, all Administrative Claims and expenses of administration, other than those set forth in Class 1 or in any other Class, incurred during the administration of the proceeding, to the extent that same exist.

**2.3.**   **Class 3.**          **Priority Tax Claims**.

**2.3.1   Class 3**.          All Claims to the extent that such are allowed pursuant to Section 507(a)(8) of the Code, and as such Claims exist on the date of the filing of the Chapter 11 Petition in this Case, including, but not limited to any Priority Tax Claims of the United States of America, Internal Revenue Service, or any  state or any local taxing authority, to the extent that any such Claim is not disputed, and entitled to priority status under the Code.

**The Classified Claims and interests in this case are divided into Classes as follows:**

**2.4.**   **Class 4.**          **Farmers & Merchants Bank**

**2.4.1**.   Pre-Petition, F&M granted Tripwire two (2) credit facilities

**2.4.2**.   The first loan from F&M ("F&M Loan 1") was originally granted to Tripwire Operations Group, LLC, and guaranteed by the Small Business Administration and also guaranteed by the Debtor.   The original amount of the F&M Loan 1 is $2,200,000.00. Approximately $2,248,427.17 is owed to F&M on the F&M Loan 1 as of the Petition Date.

**2.4.3**.   The second loan from F&M ("F&M Loan 2") was originally to Tripwire Operations Group, LLC, and guaranteed by the Small Business Administration and also guaranteed by the Debtor.  The F&M Loan 2 was in the original amount of $350,000.00, on which approximately $341,686.47 is  owed to F&M on the F&M Loan 2 as of the Petition Date.

6

**2.5     Class 5.        Goldman Sachs Mortgage Company**

    **2.5.1**.  This Class consists of the Claim of Goldman Sachs.  Goldman Sachs granted a mortgage loan to the Debtor.  As of the Petition Date, the loan is believed to be in the amount of approximately $408,910.77.  The Goldman Sachs loan is secured upon the Debtor's Residential Real Estate.

**2.6     Class 6.        ITC Capital Partners, LLC**

    **2.6.1.**  ITC is believed to have granted a merchant advance to Tripwire, which was guaranteed by the Debtor.  ITC secured a judgment in Alabama, which judgment was then transferred to Adams County, Pennsylvania.  The ITC Proof of Claim is in the amount of $536,460.75.

**2.7     Class 7.        Class 7 Vehicle Loans**

    **2.7.1.**  This Class consists of Claims secured by Vehicles.

    **Class 7A.**     Capital One granted a vehicle loan secured by a 2022 Jeep Gladiator.  As of the Petition Date, the loan is believed to be in the approximate amount of $52,588.47.

    **Class 7B**     Santander granted a vehicle loan secured by a 2022 Jeep Wrangler.  As of the Petition Date, the loan is believed to be in the approximate  amount of $63,117.37.

    **Class 7C**     Ally Bank granted a vehicle loan secured by a 2015 Chevrolet Silverado 2500.  As of the Petition Date, the loan is believed to be in the  amount of $6,909.71 as the loan has been paid in full.

    **Class 7D**     Ally Financial granted a vehicle loan secured by a 2015 Chevrolet Silverado 2500.  As of the Petition Date, the loan is believed to be in the amount of $5,824.76.

**2.8.    Class 8.        Kubota**

**2.8.1.**   This Class consists of the Claim of Kubota. Kubota granted a loan secured by a purchase money security agreement securing four (4) items set forth in a Security Agreement, consisting of a tractor and related equipment.  As of the Petition Date, the loan is believed to be in the amount of approximately $18,649.00.

**2.9.    Class 9.        General Unsecured Creditors**

**2.9.1**   All other Claims of the Debtor which are not otherwise classified herein and which are Allowed Claims, including all non-priority, unsecured Claims against the Debtor and which are not disputed or contingent and are liquidated or otherwise have an allowed Claim, as defined in the Bankruptcy Code and the Rules of Bankruptcy Procedure, shall constitute the Class 9 unsecured Claims in this case.  This class includes all Merchant Capital Companies.

**2.10.   Class 10.       Equity Holder**.

**2.10.1**  The equity interest of Ryan J. Morris, the Debtor.                .

### ARTICLE III
### CLASSES NOT IMPAIRED OR UNCLASSIFIED
### UNDER THE PLAN

The following Classes of Claims are not impaired or are not to be considered Classified under the Plan:  Classes 1, 2, 3, 5, 7A, 7B, 7C, 7D and 8.

### ARTICLE IV
### TREATMENT OF UNIMPAIRED CLASSES OR UNCLASSIFIED CLAIMS

The Claims of each of the Classes listed as unimpaired or not Classified in Article III, shall be paid and satisfied as follows:

**4.1 Class 1.  Professional Administrative Claims**.

All Class 1 Claims, as allowed by the Court, if the Plan is consensually confirmed, shall be paid in cash upon the Effective Date, or as otherwise agreed in writing by the Claim holder and

8

the Debtor. If the Plan is non-consensual (as set forth in the Code), such Claims shall be paid in cash on or before 120 days after the Effective Date or as otherwise agreed in writing by the Claimant and the Debtor. The funds otherwise owed to professionals which the Court has not yet approved and are required by the Code to be approved by the Court shall be escrowed until necessary approvals have been obtained. The provisions of this Section 4.1 are also subject to the terms of Article XIV of this Plan.

**4.2 Class 2. Administrative Claims**.

**4.2.1**. All Class 2 Claims, as allowed by the Court, if the Plan is consensually confirmed, shall be paid as they become due in the ordinary course of business, on or before the Effective Date of this Plan. If the Plan is non-consensual, such Claims shall be paid on or before 120 days after the Effective Date of this Plan or as otherwise agreed by the claimant and the Debtor, whichever of these dates shall occur later.

**4.3. Class 3   Priority Tax Claims**

**4.3.1**   All priority tax Claims in Class 3 of all taxing authorities, shall include only pre-Petition taxes and interest accrued to the Petition Date only, and shall not include any penalties. Such penalties do not include any trust fund tax penalties which may have been assessed against the Debtor. All such Claims shall have credited against such Claim any post-Petition payments as to each such Claim. All Priority Tax Claims in Class 3 shall be paid in full on or before five (5) years after the Petition Date, together with interest at the rate of 3% per annum, which interest shall begin to accrue as of the Effective Date of the Plan. Such payments will be made on a regular monthly basis, and each such payment shall begin in the first calendar month after the Effective Date of the Plan.

9

**4.4     Class 5          Goldman Sachs Mortgage Company**

**4.4.1**   Goldman Sachs granted the Debtor a mortgage loan (the "Goldman Sachs Loan"). The Goldman Sachs Loan is believed to be in the approximate amount of $408,910.77, as of the Petition Date.  The Goldman Sachs Loan is secured on the Debtor's Residential Real Estate.

The Debtor shall make regular monthly mortgage payments under the terms of the mortgage documents will continue as scheduled. The Debtor may pay the Goldman Sachs Claim prior to maturity without payment of any prepayment fee or penalty.  Except as modified by the terms of this Plan, if any, if the Plan is confirmed, all terms and provisions of the Goldman Sachs Loan Documents shall remain in full force and effect.

**4.4.2**   Goldman Sachs shall retain its security interest in the Debtor's Residential Real Property as such lien exists pre-Petition under the Loan Agreement between the Debtor and Goldman Sachs.  Such retention of a security interest in the Debtor's Residential Real Property shall continue until such time as the Goldman Sachs Claim is paid in full.  Upon the Goldman Sachs Claim being paid in full, the security interest in the Debtor's Residential Real Property shall be released and satisfied by Goldman Sachs.

**4.5     Classes 7A, 7B, 7C & 7D     Vehicle Loans**

These Classes consist of Claims secured by Vehicles owned by the Debtor.  The Vehicles of the Debtor are a 2022 Jeep Gladiator, a 2022 Jeep Wrangler Rubicon and two (2) 2015 Chevy Silverado 2500 HD trucks.

**4.5.1(a)**      The Class 7A Claim of Capital One Auto Finance consists of a secured loan on a 2022 Jeep Gladiator.  As of the Petition Date, approximately $52,588.47 is owed.  During the course of the case, the Debtor is continuing to make payments on this loan.  Under the Plan, the Debtor will make regular monthly payments under the terms of the loan agreement between the

10

Debtor and Capital One Auto Finance. The Debtor may pay the Class 7A Claim prior to maturity without payment of any pre-payment fee or penalty.

**(b)** Capital One Auto Finance shall retain its security interest in the 2022 Jeep Gladiator as such lien exists pre-Petition under the loan agreement between the Debtor and Capital One Auto Finance. This vehicle is owned by the Debtor with his partner. Such retention of a security interest in the Debtor's 2022 Jeep Gladiator shall continue until such time as the Capital One Auto Finance Claim is paid in full. Upon the Capital One Auto Finance Claim being paid in full, the security interest in the Debtor's 2022 Jeep Gladiator shall be released and satisfied by Capital One Auto Finance.

**4.5.2(a)** The Class 7B Claim of Santander Consumer USA, consists of a secured loan on a 2022 Jeep Wrangler Rubicon. This vehicle is owned by the Debtor with his partner. As of the Petition Date, approximately $63,657.00 is owed. During the course of the case, the Debtor is continuing to make payments on this loan. Under the Plan, the Debtor will make regular monthly payments under the terms of the loan agreement between the Debtor and Santander Consumer USA, Inc. as scheduled. The Debtor may pay the Class 7B Claim prior to maturity without payment of any pre-payment fee or penalty.

**(b)** Santander Consumer USA, Inc. shall retain its security interest in the 2022 Jeep Wrangler Rubicon as such lien exists pre-Petition under the loan agreement between the Debtor and Santander Consumer USA, Inc. Such retention of a security interest in the Debtor's 2022 Jeep Wrangler Rubicon shall continue until such time as the Santander Consumer USA, Inc. Claim is paid in full. Upon the Santander Consumer USA, Inc. Claim being paid in full, the security interest in the Debtor's 2022 Jeep Wrangler Rubicon shall be released and satisfied by Santander Consumer USA, Inc.

Case 1:22-bk-02205-HWV    Doc 144    Filed 09/07/23    Entered 09/07/23 14:56:18    Desc
Main Document    Page 11 of 32

**4.5.3(a)** The Class 7C Claim of Ally Financial consists of a secured loan on a 2015 Chevy Silverado 2500 HD. As of the Petition Date, approximately $6,909.71 is owed. During the course of the case, the Debtor continued to make payments on this loan. This loan is now believed to be paid in full. Ally Financial shall receive nothing further on this loan.**4.5.4(a)**The Class 7D Claim of Ally Financial consists of a secured loan on a 2015 Chevy Silverado 2500 HD. As of the Petition Date, approximately $5,824.76 is owed. During the course of the case, the Debtor continued to make payments on this loan. This loan is now believed to be paid in full. Ally Financial shall receive nothing further on this loan.

**4.6    Class 8        Kubota Credit Corp.**

**4.6.1** The Class 8 Claim of Kubota Credit Corp. consists of a purchase money security agreement on a tractor and other related equipment. As of the Petition Date, approximately $18,649.00, is owed to Kubota. During the course of the case, the Debtor is continuing to make payments on this loan. Under the Plan, the Debtor will make regular monthly payments under the terms of the loan agreement between the Debtor and Kubota Credit Corp, as scheduled. The Debtor may pay the Class 8 Claim prior to maturity without payment of any pre-payment fee or penalty.

**4.6.2** Kubota Credit Corp, shall retain its security interest in the tractor and related equipment as such lien exists pre-Petition under the loan agreement between the Debtor and Kubota Credit Corp,  Such retention of a security interest in the Debtor's tractor and related equipment shall continue until such time as the Kubota Credit Corp, Claim is paid in full. Upon the Kubota Credit Corp, Claim being paid in full, the security interest in the Debtor's tractor and related equipment  shall be released and satisfied by Kubota Credit Corp,

## ARTICLE V
## TREATMENT OF IMPAIRED CLASSES

**5.1.    Class 4        Farmers & Merchants Bank**

**5.1.1**    F&M granted the Debtor two (2) loans in the original amounts of $2,200,000.00 and $350,000.00.   Approximately $2,590,113.64 is owed as of the Petition Date on these loans (the "F&M Loans").  The F&M Loans are secured by the Commercial Real Estate.

**5.1.2**    The Debtor's Commercial Real Estate located at 1685 Baltimore Pike, Gettysburg, Adams County, Pennsylvania (the "Baltimore Pike Commercial Real Estate") is the subject of an Agreement of Sale.  The net proceeds shall be paid to F&M upon the sale of such Baltimore Pike Commercial Real Estate as set forth in a Motion to Approve Sale [Doc 140] as filed by the Debtor.

After allocation of the sale proceeds from the sale of the Baltimore Pike Commercial Real Estate, the New F&M Secured Claim, will then be recalculated.  The Debtor will pay $1,500.00 from new rent to be received for the remaining Commercial Real Estate to F&M to be applied to the New F&M Secured Claim to be applied to non-default interest.  Such payments shall continue until such time as the remaining two (2) parcels of Commercial Real Estate are sold.

**5.1.3**

The New F&M Secured Claim will be paid through the liquidation of the Commercial Real Estate.  Any balance remaining after the liquidation of the Commercial Real Estate shall be considered a Class 9 Unsecured Claim.  Except as modified by the terms of this Plan, if the Plan is confirmed, all terms and provisions of the F&M Loan Documents shall remain in full force and effect.

**5.1.4**    In the event that any of the Commercial Real Estate parcels are not sold within one (1) year after the Effective Date, the Debtor, shall within three (3) months after such one year anniversary of the Effective Date auction any remaining, unsold Commercial Real Estate.  F&M

13

Shall have the right to credit bid at such auction provided that the costs of the auction sale are paid. Such auction sale shall occur through an appropriate Motion filed in the Bankruptcy Court, if necessary.

**5.1.5** F&M shall retain its mortgage liens in the Commercial Real Estate as such liens exist pre-Petition under the Loan Agreements between the Debtor and F&M. Such retention of a security interest in the Debtor's Commercial Real Estate shall continue until such time as the real estate is sold.

**5.2** **Class 6** **ITC Capital Partners, LLC**

**5.2.1** The Debtor received an Advance from ITC which purports to be secured upon Accounts Receivable of Tripwire and possibly the Debtor's ownership of Tripwire. ITC entered a judgment in the amount of $536,460.25. This judgment, to the extent there is any equity in the Debtor's Residence, may act as a lien upon the Residence subject to the prior lien of Goldman Sachs, and the Debtor's exemption.

**5.2.2** The equity in the Debtor's Residence as of the Petition Date is calculated as $74,173.46. Such equity is determined as follows:

| | |
|---|---|
| Liquidation Value | $508,500.00 |
| Goldman Sachs Mortgage | ($408,910.77) |
| Debtor's Exemption | (25,415.77) |
| Equity | $74,173.46 |

**5.2.3** ITC shall be paid the sum of $74,173.46, together with interest at the rate of six percent (6%) per annum, amortized over a period of sixty (60) months, resulting of payments of $1,433.99 per month.

14

**5.2.4**  ITC is granted a lien in the original amount of $74,173.46, on the Debtor's Residence, reduced as payments are made in accordance with this Plan, until such time as the sum set forth in Section 5.2 of $74,173.46 is paid in full to ITC.

**5.2.5**  The balance of any Claim of ITC shall be treated as a Class 9, General Unsecured Creditor, as set forth in Section 5.3 of this Plan (the "ITC Unsecured Claim").

**5.3  Class 9        General Unsecured Creditors**

**5.3.1**  Class 9 includes all other Claim holders of the Debtor who are not otherwise classified under the Plan, including all general unsecured creditors, as well as including the ITC Unsecured Claim and any other Merchant Capital Companies.

**5.3.2**  Beginning six (6) months after the Effective Date, the Class 9 Unsecured Claim holders shall be paid a pro rata portion of the sum of $5,000.00, payable in five (5) years by paying ten (10) biannual installments of $500.00 each.  Such payment to the Class 9 Claim holders shall be paid only to those Claims which are Allowed.

**5.3.3**  In the event that the Court of Common Pleas of Adams County, Pennsylvania, or the Bankruptcy Court, determines that the Debtor has an interest in the Marital Real Estate, the Debtor shall pay an amount equal to such equity interest.  Payment to Class 9 creditors shall occur within thirty (30) days of the receipt of any payment of equity to the Debtor.  Such payment shall occur only if the Debtor receives an award of an interest in the Marital Real Estate to the Debtor or the Debtor's spouse and the Debtor agree to a payment.  At the Debtor's option, the Debtor can file a Motion to Sell the Marital Real Estate through the Bankruptcy Court and any net equity in such Marital Real Estate shall be paid to creditors within sixty (60) days after closing on the sale of the Marital Real Estate, if the Court approves such sale.  The Debtor's equity in the Marital Real Estate could be as high as $72,500.00 in equity, determined as follows:

15

| Liquidation Value | $315,000.00 |
| Mortgage Loan | ($170,000.00) |
| 50% Interest | 72,500.00 |

The Marital Real Estate is owned by the Debtor along with his estranged spouse, Karen L. Morris. There is no guaranty that the Court of Common Pleas of Adams County, Pennsylvania, or the Bankruptcy Court, will award any portion of such Marital Real Estate to the Debtor.

**ARTICLE VI**
**MEANS FOR EXECUTION OF THE PLAN, NON-CONSENSUAL PLAN PROVISIONS, AND REMEDY IF THE PLAN FAILS**

**6.1    Means for Execution of the Plan**

**6.1.1    Operations of Tripwire**

**6.1.1.1** The Debtor intends to continue winding down the business affairs of Tripwire Operations, LLC.

**6.1.1.2** The Debtor intends to sell the Commercial Real Estate which funds will be utilized to pay the Claim of F&M.

**6.1.1.3** The Debtor may sell the Marital Real Estate set forth in Section 5.3above, in the event it is determined the Debtor is awarded any interest in the Marital Real Estate by the Court of Common Pleas of Adams County, Pennsylvania, or the Bankruptcy Court.

**6.1.1.4 Sale of Other Assets.** The Debtor retains the right to sell any of his Assets. The Debtor is not required to sell any Assets, except for the Commercial Real Estate.

**6.1.1.5 Projections.** Attached hereto as Exhibit "A" are Projections setting forth the Debtor's ability to make the payments under the Plan. The Projections set forth the cash flow and disposable income of the Debtor. Under the Plan, the Debtor is proposing to pay very little as he has virtually no disposable income as set forth in the Projectiosn and after payments to secured creditors under the Plan.

**6.1.1.6 Liquidation Analysis.** Attached hereto as Exhibit "B" is a Liquidation Analysis for the Debtor. The Liquidation Analysis sets forth that the Creditors are receiving more under the Plan than they would receive from a liquidation. Thus, the Debtor believes that the Best Interests of the Creditors Test required by the Bankruptcy Code is met by the Plan terms.

**6.2     Non-Consensual Plan**

In the event that the Debtor's Plan fails to obtain the necessary votes to be considered a consensual Plan, then the Debtor intends to request that the Court approve a Non-Consensual Plan as set forth in Section 1191(b) of the Code and as set forth in Section 10.3 of the Plan. In the event of a non-consensual Plan, the net disposable income of the Debtor shall be paid to the Trustee for distribution to unsecured creditors as set forth in this Plan and in Section 10.3 of the Plan.

**6.3     Remedy if the Plan Fails**

In the event there is an inability of a Debtor to complete the Plan, the Debtor shall either liquidate his assets and pay creditors in accordance with state law and Bankruptcy Code priorities, or convert its case to Chapter 7. Before default, the provisions of Article XII of this Plan as to default shall be effective.

Upon an alleged default or failure as to a plan of a Debtor, notice must be provided to Debtor's counsel and as set forth in Article XII of the Plan.

**ARTICLE VII**
**EXECUTORY CONTRACTS**

**7.1     Insurance Contracts**

Any contract for insurance providing for insurance coverage as to the Debtor's assets may exist and as may be in effect as of the Confirmation Date will be assumed as of the Effective Date of the Plan until terminated under the terms of any such insurance agreement.

17

**7.2.    Other Contracts**

Any leases for cell phone use, or any other licenses or utility agreements are assumed under the Plan as of the Effective Date.  Any other contracts or leases not specifically set forth in this Article VII, shall be rejected as of the Effective Date of the Plan.

**7.3.    Arrearages**

Any lessor, to the Debtor, or contract party which believes it may have a claim for arrearages for any lease or contract assumed hereunder must provide the amount of such arrearages to the Debtor within twenty (20) days after Confirmation of the Plan.

**7.4.  Rejection Claim**

Any Claim based upon a rejected contract or lease, not including previously rejected contracts or leases, shall be required to be filed on or before twenty (20) days subsequent to the Confirmation Date of the Plan or such Claim shall be deemed barred.  Except as otherwise set forth in this Plan, all such Claims shall be under and pursuant to and subject to the provisions of Section 365 of the Code.

**ARTICLE VIII**
**PROCEDURE FOR RESOLVING DISPUTED CLAIMS**

**8.1.  Objections to Claims**.

The Debtor reserves the right to object to any Claims as filed with the Court.  The time period for the Objections to Claims may be set by the Court at the Confirmation Hearing or at such other date.  Any Objections shall be served upon the holder of the Claim to which an Objection is made.

18

**8.2. Prosecution of Pending Objections to Claims**.

Objections to Claims that are pending as of the Confirmation Date, or were made after the Confirmation Date, shall be prosecuted after the Confirmation Date. The objecting party shall have the discretion to litigate to judgment, settle or withdraw Objections to disputed Claims.

**8.3. Payment of Disputed Claims**.

Except as may be otherwise agreed with respect to any disputed Claim, no payments shall be paid with respect to all or any portion of a disputed Claim unless and until all Objections to such disputed Claim have been determined by a final Order. Payments and distributions to each holder of a disputed Claim, to the extent that it ultimately becomes an allowed Claim, shall be made in accordance with the provisions of this Plan. Upon resolution of the disputed Claim, final distribution, pro rata, shall occur. The Debtor reserves the right to propose a payment schedule as to any such disputed Claim which differs from that of other unsecured Claim holders.

**8.4. Payments to Unsecured Creditors**.

Payments to Unsecured Creditors shall occur through the Chapter V Trustee, if the Plan is non-consensual. If the Plan is consensual, payments shall occur through the Debtor or through Cunningham, Chernicoff & Warshawsky, P.C. Each of the Chapter V Trustee or Cunningham, Chernicoff & Warshawsky shall be permitted to charge a reasonable fee, as may be allowed by the Court for any disbursements. Also, payments by the Trustee shall be in accordance with Section 1194 of the Bankruptcy Code.

Case 1:22-bk-02205-HWV    Doc 144    Filed 09/07/23    Entered 09/07/23 14:56:18    Desc
Main Document    Page 19 of 32

# ARTICLE IX
## RETENTION AND ENFORCEMENT OF CLAIMS
## BELONGING TO THE ESTATE

**9.1.**

All preference Claims pursuant to Section 547 of the Code, all fraudulent transfer Claims pursuant to Section 548 of the Code, all Claims relating to post-Petition transactions under Section 549 of the Code, all Claims recoverable under Section 550 of the Code, all Claims against a third party on account of an indebtedness, and any other Claims owed to or in favor of the Debtor, are hereby preserved and retained for enforcement subsequent to the Effective Date of the Plan by the Debtor.

# ARTICLE X
## CONFIRMATION REQUEST; NON-CONSENSUAL PLAN

**10.1. Impaired Classes to Vote**.

Only Classes of creditors and interest holders that are impaired shall be entitled to vote as a Class to accept or reject the Plan. Those Classes of creditors which are not impaired or are not Classified, that is Classes 1, 2, 3, 7A, 7B, 7C, 7D and 8 shall not be permitted to vote on the Plan.

**10.2. Acceptance by a Class of Creditors**

A Class of creditors shall have voted to accept the Plan if the Plan is accepted by creditors of such Class that holds at least two-thirds (2/3) of the aggregate dollar amount, and more than one-half (1/2) in number of the allowed Claims of creditors of such Class that vote to accept or reject the Plan.

**10.3 Confirmation Request**.

It is requested that the Court confirm the Plan in the event that each Class of Claims accepts the Plan in accordance with the provisions of the Bankruptcy Code. In the event that a Class of Claims does not accept the Plan, then confirmation will be requested pursuant to Section 1191(b)

20

of the Bankruptcy Code as it is believed the Plan meets the provisions of such Section of the Code as it does not discriminate unfairly and the Plan is fair and equitable. In the event a class of unsecured Claims does not accept the Plan, the Debtor proposes to pay all of its projected disposable income to the Subchapter V Trustee for distribution to unsecured creditors for a period of three (3) years. Such sum to be so paid represents the projected disposable income of the Debtor for such three (3) year period of time, or the value of the property to be distributed under the Plan is not less than the projected disposable income of the Debtor during such period of time.

**ARTICLE XI**
**DISCHARGE**

**11.1**.

    **11.1.1**  In the event that the Plan as to the Debtor is confirmed pursuant to Section 1191(a) of the Code, then the discharge of such Debtor shall occur upon entry of the Confirmation Order. All creditors are limited, pursuant to the provisions of the Code, and pursuant to this Plan, to the treatment provided by this Plan and the Code for all Claim holders and Equity holders, including contingent and disputed Claims, which are not otherwise allowed Claims, and including any lease or executory contract rejection Claims.

    **11.1.2**  In the event that confirmation of the Plan occurs pursuant to Section 1191(b) of the Code, then discharge of the Debtor, shall occur only after Plan payments are completely made Classes 1, 2, 3, 4 and 6. Discharge shall occur as soon as possible after all such payments are made.

Case 1:22-bk-02205-HWV    Doc 144    Filed 09/07/23    Entered 09/07/23 14:56:18    Desc
Main Document    Page 21 of 32

## ARTICLE XII
## INJUNCTION

**12.1**.

      **All creditors of the Debtor are limited, pursuant to Section 1141 of the Code, to the treatment provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise Allowed Claims. Further, as of the Effective Date, this Plan shall act as an injunction against and shall enjoin all holders of a debt held by a Claim holder, whether or not (i) a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Code; (ii) such Claim is allowed under Section 502 of the Code; or (iii) the holder of such Claim has accepted the Plan; from seeking payment of such Claim from the Debtor, other than as set forth in this Plan. The remedy for the breach of a provision of this Plan shall be an action in this Bankruptcy Court. The stay shall remain in effect as to any action against the Debtor through the Effective Date, when it is replaced by the injunction in this Section and Sections 524(a) and 1141 of the Code; and Claim holders are limited to the remedies set forth herein, under the Code and under applicable law. In the event that any Claim holder believes that a debt has not been paid as required under the Plan, such Claim holder is limited to remedies as provided under the Bankruptcy Code and applicable law.**

      **Further, in the event of non-payment under this Plan, no default may occur until after the expiration of twenty (20) days after receipt of notice of such non-payment by the Debtor's counsel, Cunningham, Chernicoff & Warshawsky, P.C., without cure of the non-payment. Such notice is to be forwarded to Debtor's counsel by hand delivery, email, overnight courier or U.S. Certified Mail, Return Receipt Requested, at the address or email address set forth at the end of this Plan.**

## ARTICLE XIII
## REVESTING

**13.1**.

On the Effective Date, the Debtor shall be revested with all of its property then existing, free and clear of all Claims, liens and encumbrances arising prior to the date of the entry of the Confirmation Order, except as limited by Article V of the Plan. Under Article V of the Plan, F&M Goldman Sachs, Capital One, Santander and Kubota shall retain their liens on such of the Debtor's Assets as set forth in Article V of the Plan.

## ARTICLE XIV
## PROFESSIONALS

**14.1**.

The Class 1 professional administrative Claim holders are believed to be Cunningham, Chernicoff & Warshawsky, P.C., counsel to the Debtor. The Subchapter V Trustee is Lisa A. Rynard, Esquire.

**14.2**.

All allowed costs of administration for professionals shall be paid as set forth in Section 4.1 of the Plan. All professionals employed by the Debtor shall continue to be employed and to be entitled to compensation from the Debtor for their services after the Effective Date on a regular ongoing basis. To the extent that any approvals are necessary which have not occurred as to any professional services, and such approval has not yet been entered by the Court, then an amount is to be escrowed and set aside on the Confirmation Date. To the extent that any services have been performed by professionals subsequent to the Confirmation Date of this Plan or any modification of this Plan, or the Debtor employs new professionals Post-Confirmation, such services and payments will not be subject to the review and approval of the Court, except as may be necessary

Case 1:22-bk-02205-HWV    Doc 144    Filed 09/07/23    Entered 09/07/23 14:56:18    Desc
Main Document    Page 23 of 32

for the Trustee. All reasonable fees for professionals shall be paid in the ordinary course by the Debtor.

## ARTICLE XV
## HISTORY OF THE BUSINESS
## OPERATIONS OF THE DEBTOR

**15.1.**

The Debtor commenced a business known as Tripwire Operations Group, LLC ("Tripwire"). Tripwire was formed as a Pennsylvania limited liability company. Tripwire provided various training and other services regarding explosives and weapons to the military and various other governmental agencies.

Tripwire experienced various financial problems, particularly during Covid. As a result, Tripwire obtained various Merchant Advances. When business did not increase in sufficient amounts to pay such debt, Tripwire filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the Middle District of Pennsylvania on August 9, 2022. The case was determined to be a no asset case and this Court issued a Final Decree as to Tripwire on January 12, 2023. The Tripwire Chapter 7 Bankruptcy case is now closed.

Previously, in order for Tripwire to operate, it secured two (2) loans from F&M. These loans were guaranteed by the Small Business Administration. The F&M Loans are collateralized by the Debtor's Real Estate.

The Debtor is attempting to finalize the business of Tripwire and its business operations by selling the Commercial Real Estate and winding down the affairs of Tripwire, particularly with respect to the debt of Tripwire as guaranteed by the Debtor.

The Debtor is now employed by an entity known as Tripwire South, LLC, which is separate from Tripwire.

24

# ARTICLE XVI
## MISCELLANEOUS

**16.1**.

The Debtor has filed a Motion to fix a Bar Date as to Claims. Notice of such Bar Date has been provided to creditors. The Bar Date was July 25, 2023, for General Claims and for Government Claims.

**16.2**.

The "Effective Date of the Plan" will be the first day of the calendar month following thirty (30) days after the Confirmation Order becomes final, and shall not have been reversed, stayed, or adversely modified or amended. Such date shall be subject to the right of the Debtor to request that the Court extend the Effective Date.

**16.3**.

Upon the Confirmation Order becoming a Final Order, the Debtor, its creditors and Claim holders, and equity interest holders shall be legally bound by the Plan, whether or not they have accepted the Plan.

**16.4**.

The transfer of any assets including any real estate, if any, during the pendency of this case, or after Confirmation, shall constitute a transfer under this Plan within the purview of Code Section 1146(c) and shall not be subject to transfer, stamp or similar taxes under any law.

**16.5**.

All quarterly fees which may be due and owing, if any, to the United States Trustee under 28 U.S.C. §1930 for the period of time up to Confirmation shall be paid pursuant to Article IV, Section 4.2 of the Plan when due. All quarterly fees, if any, for the U.S. Trustee for the period

Case 1:22-bk-02205-HWV    Doc 144    Filed 09/07/23    Entered 09/07/23 14:56:18    Desc
Main Document    Page 25 of 32

after confirmation of the Plan shall be paid pursuant to Article IV, Section 4.2 of the Plan and in the ordinary course.  This Debtor is not required to pay United States Trustee fees.

**16.6**.

The Debtor may seek as soon as possible, upon proper Motion, for the closing of the case in accordance with the provisions of the Bankruptcy Code and dependent upon the activity in the case and as to the Plan.  Until such time as the Court, upon Motion, orders the closing of the case, the Debtor shall be subject to such provisions as are relevant as to the payment of quarterly fees to the Office of the U.S. Trustee, if any are required to be paid.

**16.7**.

Any and all Claims which are listed in the Bankruptcy Schedules as disputed, contingent or unliquidated, and for which no proper Proof of Claim has been filed prior to a claims bar date, shall be disallowed, and shall not be entitled to vote on the Plan, including any rejection Claims on account of any leases or executory contracts.  If there is an objection pending as to a Claim when voting is to occur, such Claim holder shall not have its Claim considered for voting purposes until such Claim is allowed by the Court.

**16.8**.

Any Class that is unimpaired or not Classified shall not vote on the Plan and the Debtor, at his option, shall not be required to send the Plan to Claim holders in such Class.  The Debtor intends to send informational Plans to all Claim holders.

**16.9**.

Any amount set forth by a Claim holder on any ballot solicited in this case and voted by a Claim holder shall not be binding upon the Debtor, but rather, the amounts scheduled by the Debtor, if not disputed, contingent or unliquidated, or as set forth in a Proof of Claim filed by a Claim holder, and as to which no objection has been sustained, shall control the amount of a

26

creditor's Claim for purposes of voting on the Plan, or distribution under the Plan.  Further, in the event that a creditor sets forth an incorrect Class for its Claim on any ballot voted on this Plan, then the Debtor reserves the right to correct such ballot to set forth the proper Class.  Except as previously resolved by a Final Order, the Debtor reserves the right to object to any and all Claims filed in this Case, including any late filed Claims, which Claims are filed after the Bar Date established by the Court.  Unless a Court Order provides otherwise, late filed Claims will not share in any distribution under the Plan.

**16.10**.

Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania.

**16.11**.

The automatic stay of 11 U.S.C. §362 shall remain in effect as under Section 12.1 of the Plan and subject to the injunction set forth in Section 12.1 of the Plan, and under the Bankruptcy Code.

**16.12**.

After the Effective Date, the Debtor may, and so long as it does not materially and adversely affect the interests of any claimant, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order Confirming the Plan, and such matters as may be necessary to carry out the purposes and effect of the Plan and without leave of the Court, except as required by the Plan or the Code.

**16.13**.

After the Effective Date, the Debtor may take such actions as necessary to effectuate the Plan without leave of Court, except as required by the Plan or the Code.

**16.14**.

**Pursuant to Sections 105, 524, or 1141 of the Bankruptcy Code, upon the Effective Date, Debtor's counsel and professionals shall be deemed released and held harmless in connection with any Claims, charges or liabilities arising directly or indirectly in connection with their service during the Chapter 11 case, or the representation of the Debtor, except to the extent such liability arose out of fraud, willful or reckless conduct.**

**16.15.**

**The Debtor and his employees or agents (including the professionals and any other professionals retained by such persons) shall have no liability to any holder of a Claim or equity interest for any act or omission in connection with, or arising out of the formulation of the Plan, the pursuit of approval of the Plan, or the solicitation of votes for or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing contained in this Section shall be deemed to cause a release of any personal guarantee of any party, as to any of the Claims against the Debtor, to the extent that such exist. The Release contained herein is intended to be only with respect to the Plan process.**

**16.16**.

For purposes of payments under the Plan to all Claim holders, if the Plan is non-consensual, the disbursements shall occur by the Subchapter V Trustee with respect to unsecured creditors. The Debtor will directly pay its secured creditors, as set forth in this Plan. If the Plan is consensual, Plan distributions shall occur by the Debtor or Cunningham, Chernicoff & Warshawsky, P.C.

If the Plan is a non-consensual Plan, and the Subchapter V Trustee is making disbursements to unsecured Creditors, within twenty (20) days after the end of each calendar quarter, during the term of payments to unsecured Creditors under the Plan, the Subchapter V Trustee shall file quarterly reports disclosing all disbursements by the Trustee made in the prior quarter pursuant to the Plan.

**16.17**.

Any distribution under the Plan that is returned as undeliverable shall be retained by the Debtor after any applicable period of time for retention has expired.

**ARTICLE XVII**
**PRIOR ORDERS OF THE BANKRUPTCY COURT**

**17.1**.

Prior Orders of the Bankruptcy Court in the Chapter 11 case are incorporated in this Plan and made a part hereof, to the extent not inconsistent with this Plan.

**ARTICLE XVIII**
**MODIFICATION OF THE PLAN**

**18.1. Before Confirmation**.

At any time prior to Confirmation, the Debtor may propose amendments or modifications of the Plan at any time, but such modification may not cause the Plan, as modified, to fail to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. If the Debtor files a

Case 1:22-bk-02205-HWV    Doc 144    Filed 09/07/23    Entered 09/07/23 14:56:18    Desc
Main Document      Page 29 of 32

modification or amendment with the Bankruptcy Court, the Plan as modified or amended shall become the Plan.

**18.2. After Confirmation**.

At any time after Confirmation, the Debtor may, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan. Further, the Debtor may, with approval of the Court, after notice and hearing, modify or amend the Plan to the extent it may materially or adversely affect creditors, and if the Court confirms such Plan as modified or amended, such modified or amended Plan shall become the Plan.

**ARTICLE XIX**
**JURISDICTION OF THE COURT**

**19.1.**

The United States Bankruptcy Court for the Middle District of Pennsylvania will retain jurisdiction until this Plan has been fully consummated, or as otherwise Ordered by the Court, notwithstanding the administrative closing of the Chapter 11 Case, including, but not limited to the following purposes:

  a. The Classification of the Claim of any creditor and the re-examination of Claims which have been allowed in this case and the determination of such objections as may be filed to creditors' Claims including as to the amount of any Claim or Administrative Claim. The failure by the Debtor to object to, or to examine any Claim for the purposes of voting on any plan, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the Claim in whole or in part.

  b. Determination of all questions and disputes regarding title to the assets of the Debtor's estate, and determination of all causes of action, controversies, disputes, conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to any right of the Debtor to recover assets, including accounts receivable,

30

preferences and fraudulent conveyances, pursuant to the provisions of the Bankruptcy Code.

c.      The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

d.      The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and pursuant to this Plan.

e.      To enforce and interpret the terms and conditions of this Plan.

f.      To approve, if necessary, the sale of any assets of the Debtor upon such terms and conditions to be set forth in the proposed sale.

g.      To enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms, and conditions of such title, rights, and powers as this Court may deem necessary, and to enforce the terms and provisions of this Plan.

h.      To determine any and all applications, motions, adversary proceedings and contested matters, whether pending before the Court on the Effective Date, or filed or instituted after the Effective Date, including, without limitation, proceedings to recover voidable transfers under the Code or other applicable law.

i.      To review any actions by or requested by the United States Trustee or the Subchapter V Trustee.

Debtor:

_____

Ryan J. Morris

Date:

**<u>Debtor's Counsel</u>:**

Robert E. Chernicoff, Esquire
CUNNINGHAM, CHERNICOFF & WARSHAWSKY, P.C.
2320 North Second Street
P.O. Box 60457
Harrisburg, PA  17106-0457
(717) 238-6570
rec@cclawpc.com